### Raddai Wight & Wife *vs.* Mary Baury.

A will, which was made and took effect before the passage of *St.* 1791, *c.* 60, § 3, contained the following provisions: "I give to my daughter S. the use and improvement of" certain real estate " during her natural life, and at her death I give the same to her children lawfully begotten." "I also give her. during her life," certain other estate. "But all the foregoing grants and bequests are given her only during her natural life, and then to descend to her child or children lawfully begotten, their heirs and assigns forever; but if she should leave no child, then to be equally divided among my grandchildren; it being my intention to entail as far as my grandchildren." S. had two children, both of whom were living at the death of the testator. It was held, that the will gave S. an estate for life, remainder to her children in fee.

In this case, which was argued and decided at the last November term, the facts appear in the opinion of the court.

*C. M. Ellis,* for the demandants.

*S. Bartlett,* for the tenant.

Shaw, C. J.  This is a question arising under the will of Hugh Hall, made and proved in 1773, before the revolution, and proved before the Governor and Council.

The demandant claims an undivided half of the described premises, on the ground that, by the will, an estate for life was given to the testator's daughter Sarah Clark, then the wife of Elisha Clark, for her life, remainder to her children in fee tail, two of whom were then living, to wit, Hugh Hall Clark and Mary Clark, now the tenant, with remainder over to his other grandchildren; that Sarah Clark died; that Hugh Hall Clark having survived the testator, his grandfather died without issue shortly after the decease of his mother; that his estate tail was thereby determined, and the gift over to his other grandchildren took effect, under one of whom the demandant claims.

The clauses in the will, bearing upon this question, are as follows: "I give to my daughter, Sarah Clark, wife of Mr. Elisha Clark," &c., "the use and improvement of the tene-ment, wherein I now dwell," "during her natural life; and at her death, I give the same to her child or children lawfully begotten; and in the same manner, I give to my said daugh-

ter Sarah, the house lot adjoining;" " also the use of the front barn on my daughter Elizabeth's lot, during her life; I also give her, in the same way and manner, the tenement Mr. Bayley now lives in." " I also give my said daughter Sarah, during her life, the tenement rented to Mr. Norcross." " I also give her, during her life, one whole right of my land in Townshend," &c. " But all the foregoing grants and bequests are given her only during her natural life, and then to descend to her child or children lawfully begotten, their heirs and assigns forever; but if she should leave no child, then the foregoing bequests are to be equally divided among my grandchildren; it being my intention to entail as far as my grandchildren."

" As to my money, in the bank of England, which I ordered" certain persons named " to purchase, I order my executor to dispose of what is now due to me from each of their accounts, by drawing bills for the same, and laying out the amount in good brick houses in Boston, for the use of my two daughters, and then to descend to their children."

The testator also ordered all reversions of every kind, that he was entitled to, to be divided equally among his three children.

This devise was made and took effect, before the passage of the act, which altered the rule in Shelley's case in this commonwealth, and is to be construed and acted upon as if the statute had not been passed.

It appears by the facts that, at the time of the making of the will and the death of the testator, Mrs. Clark had two children living, Hugh Hall and Mary, that they both survived their mother, and then Hugh died leaving the present tenant Mary, now Mrs. Baury, his only sister and sole heir at law. Upon the construction of this will, the court are of opinion, that the daughter took an estate for life, with a remainder in fee to the two children; that they took vested remainders subject to open and let in after born children, if any, to an equal share with themselves. But no other child was born. They therefore, upon the decease of their mother, took an estate in fee in equal shares

The bequest to the daughter is in terms *for life, for her natural life,* studiously repeated; and after all the devises, he again repeats, for greater certainty, that all the devises to her are only during her natural life. This, however, according to the rule, might have been enlarged to an estate tail in her, by after words carrying a clear implication that the estate was to go to her issue indefinitely. But such is not the use of the words in the present case. The words are, to her for life, and then to descend to her child or children, lawfully begotten, their heirs and assigns forever. It is clearly not to the heirs of her body, which would, by force of the rule in Shelley's case, have created an estate tail by implication in her. The words, therefore, directing who are to take in remainder, her children lawfully begotten, are merely a designation of the persons who are to take in remainder, and are to be construed as words of purchase. In the actual case, as there were children in being, it is a vested remainder. It may be proper to remark, in passing, that if there were no child in being, at the death of the testator, it would have been a contingent remainder, until a child should be born, but would immediately vest on such birth. It may also be remarked, that in such event, if the tenant for life had destroyed the particular estate, before a child was born, in whom it could vest, it would be defeated. Nor does it change the character of this estate, that there was a devise over. If the two grandchildren, Hugh and Mary, took an estate in fee, the devise over would either be void, or could operate only as an executory devise.

In the manner in which the words are used, "if she should die leaving no child," then over, the devise clearly means, not if she should die leaving no issue, looking to an indefinite failure of issue; but, as the term naturally imports, leaving no child, *i. e.* leaving no child to take the estate in remainder, after the devise to the mother for life. But if she did leave any children, then the devise over had no effect, and such children by force of the devise took a fee.

In the case of *Goodright* v. *Dunham,* 1 Doug. 264, a devise of real estate to testator's son for life, and after his son's death to his, the son's, children and their heirs equally, and in

case the son should die without issue, then over, was held to give a fee to the children, notwithstanding the word issue would ordinarily give him, the son, an estate tail by implication; and the terms, if he die without issue, in their connection with other provisos, were held equivalent to the words, if he die without child or children.   Lord Mansfield said, that the words " in case he die without issue," being tacked to the preceding clause, must mean the same thing as " and in case he dies without children."

Taking that to be the meaning of the words, it is an authority precisely in point to the present case, where the words are, " if she should leave no child."

We refer to *Doe* v. *Perryn*, 3 T. R. 484.   The case was a devise to B, the wife of A, for life, remainder to the children of A and B, and their heirs forever, and for default of such issue remainder over; and at the death of the devisor, A and B having no child, it was held that the devises to the children were contingent remainders in fee, and the words " default of issue," were referable, not to a general failure of issue, but meant in case there should be no such child.   Such remainders would be contingent, because no one was in being to take at the decease of the testator; but when any child should be born, the remainder would vest in such child, to open and let in others who might afterwards come into being.   Here it was held, that " default of such issue" is equivalent to " default of such children," then over.   So understood, that case is a precise authority for the present.   *Ives* v. *Legge*, cited in a note, p. 488, illustrates the same rule.

*The King* v. *The Marquis of Stafford*, 7 East, 521.   This case is an elaborate review of this whole doctrine, with the same result.   After various provisions, the devise was to a granddaughter for life, with power of appointment by will or deed; and in default of such appointment, then to the children of said granddaughter lawfully to ʋe begotten, and *their heirs*, as tenants in common ; and in default of such issue, then over.   It was held that the default of such issue must mean to refer to the children of the granddaughter, before mentioned, and that such children took an estate in fee.

We think these views are confirmed and illustrated in a late Treatise of Hayes on Real Estate, 29, 30, 31.

The case of *Bowers* v. *Porter*, 4 Pick. 198, as far as it goes, confirms these views; but it is cited principally to show the change of the law in this commonwealth, effected by *St.* 1791, *c.* 60, § 3, which was intended to alter the rule in Shelley's case.

The court are of opinion, that the clear effect of the devise was, to give an estate for life to Mrs. Clark, with remainder to her children in fee. But this devise being made before the statute, it may be proper to consider how the case would stand, under the rule in Shelley's case, which was a rule of the common law, in force before the statute. The words, to her for life, and at her decease to her children lawfully begotten, which are ordinarily words designating heirs of the body, if uncontrolled by other provisions, might seem, by force of the rule in Shelley's case, to create an estate tail in Mrs. Clark. But they are controlled. The devise to these children is in terms to them, their heirs and assigns forever; unequivocal words designating a fee simple. Now, if she took an estate tail, that is, an estate to her and the heirs of her body, it must go to the heirs of the body, till exhausted, and could be only an estate tail in those children; which is directly repugnant to the devise to them in fee, and therefore could not be so intended.

Again; the testator says in another clause, applied generally to these devises, " it being my intention to entail as far as my grandchildren." This carries a clear implication that the entail shall not extend beyond his grandchildren. Now this intent is contrary to the rules of law governing the entailment of estate, which is an estate of inheritance, but limited to a particular description of heirs, instead of general heirs. When such an estate is created by a devisor, it must continue, unless barred, until determined for want of heirs in tail, and even then, without some further limitation over, will revert to the heirs of the devisor. A devisor, therefore, who creates an estate tail, and declares an intention that, after a certain number of descents to heirs in tail, it shall become an estate in fee, and go to general heirs, declares an intent which the law will

not carry into effect. But the clause in the present will is available to this extent, that it manifests an intention that his grandchildren, the children of his daughter, shall have an estate in fee. The intention manifestly was, what is repeatedly declared in his will, that his daughter should not have the power to alienate the inheritance, and prevent it from coming to the grandchildren; and this he attempted to do, by declaring his intention to entail as far as grandchildren, which he could not do; but this intention is accomplished by regarding the estate to her as an estate for life, with remainder to her children. The effect of the rule in Shelley's case, therefore, is controlled by other clauses and provisions in the will; it was not a devise to her for life, with remainder to her heirs generally, or to the heirs of her body, and of course not within the rule. The grandchildren took as purchasers, and not as heirs.

The court are of opinion that the legal effect of this devise was, to give Mrs. Clark an estate for life, with remainder to her children in fee, and that there is nothing in other parts of the will to vary this result. On the contrary, there are some provisions which tend to confirm this construction. We have already remarked upon the intent to entail as far as grandchildren, of course no further. There is another clause in the will, by which the testator directs that certain property shall be sold by his executors, they laying out the amount of the proceeds in good brick houses in Boston, for the use of his two daughters, and then to descend to their children. The form of giving the deeds by which the terms of such conveyances should be settled, is not mentioned in the will; but we think the intent of this direction would be accomplished by the executors, by holding the proceeds of such property in trust, for the daughters for life, and then for the grandchildren, until vested in houses, and then by laying out the same in the purchase of such brick houses, by deed, to the use of the daughters for life, remainder to the grandchildren in fee.

It is very important that certain well established rules in the construction of wills should be adhered to, for the sake of certainty in this important and difficult branch of the law; and therefore that slight variations of expression in a will,

often drawn in haste, and without much care or legal skill, should not vary these rules, upon any supposed differences in the intentions of testators, founded upon such expressions.

Upon our view of the construction of Hugh Hall's will, his grandson Hugh Hall Clark took an estate in fee in the premises, which upon his decease, intestate and without issue, descended to his mother, the tenant in the present action, as his only heir at law.

*Judgment for the tenant.*